OPINION
{¶ 1} This appeal is taken from a final judgment of the Geauga County Court of Common Pleas, Juvenile Division. Appellant, James Geisert, appeals from the juvenile court's decision terminating his parental rights and granting permanent custody of his minor daughter to appellee, Geauga County Jobs and Family Services ("GCJFS").
 {¶ 2} Shilar Salsgiver ("Shilar") was born on July 13, 2000. For the first five months of the child's life, she lived with her natal mother, Ruth Salsgiver ("Ruth"). Although appellant did not live with his daughter and her mother, he regularly visited Shilar and provided some financial support to Ruth.
 {¶ 3} On December 13, 2000, GCJFS filed a complaint asking for emergency custody of Shilar based on allegations that she was a dependent and neglected child. According to the agency, Ruth had been hospitalized the night before because of an overdose on prescription medication and it did not know the identity of the child's father.
 {¶ 4} The juvenile court immediately held a hearing at which appellant was present. In a written judgment entry, the juvenile court indicated that during the proceedings the court informed appellant of the allegations and explained the possible consequences. At that time, appellant "indicated an understanding of the complaint and the procedural aspects involved." The juvenile court then awarded emergency custody of Shilar to the agency.
 {¶ 5} Initially, appellant was unwilling to admit that he was Shilar's father. However subsequent testing verified appellant's paternity and he was made a party to the custody action. In February 2001, GCJFS amended its complaint to allege that Shilar was only a dependant child. Because he had not been involved in the events that led to Shilar's removal from Ruth's home, appellant did not enter a plea to the complaint; rather, he informed the trial court that he would not object to a finding of true on the sole charge.
 {¶ 6} Following the February 2001 hearing, the juvenile court adopted the case plan recommended by GCJFS for reunifying both appellant and Ruth with Shilar. Although the case plan included four separate objectives with respect to Ruth, it set forth only one for appellant, which was to complete a mental health assessment and to follow any recommendations made by a mental health counselor.
 {¶ 7} The juvenile court later adopted an amendment to the case plan that required appellant to pay child support for Shilar while she was in GCJFS' custody. Moreover, the court informed appellant that if he ever wanted to have custody of Shilar himself, he would have to take an appropriate parenting class, allow GCJFS to conduct a home study of his residence, and exercise his visitation rights on a regular basis.[1]
 {¶ 8} In trying to satisfy the primary objective of the case plan, appellant first contacted a licensed mental health counselor in April 2001. During his first appointment with the counselor, appellant was given a written test as part of the assessment. After completing only one fourth of the questions on the test, appellant left the counselor's office and did not try to make another appointment until July 2001. By that time, this counselor could not take appellant as a patient because he had retired.
 {¶ 9} Two months later, appellant contacted a second counselor and was able to complete the assessment by October 2001. After considering the results, the second counselor concluded that appellant did not suffer from any mental problems that would adversely affect his ability to care for Shilar. Accordingly, the counselor only recommended that appellant attend an appropriate parenting class. Appellant, however, did not take any steps to act upon the counselor's single recommendation until January 2002.
 {¶ 10} In regard to the other court-imposed requirements for reunification, appellant failed to take the necessary steps to have a home study of his residence performed until late 2001. Once completed, the results showed that appellant had failed to prepare a room for Shilar in the house. Furthermore, although appellant visited Shilar regularly when the case plan was first implemented, the consistency of the visitation decreased considerably in late 2001. Finally, even though the child support order was in effect for the majority of 2001, appellant did not make his first payment until January 2002.
 {¶ 11} In late November 2001, GCJFS moved the juvenile court for permanent custody of Shilar. Following a two-day hearing in which appellee presented ten witnesses in support of its motion and appellant testified in his own behalf, the juvenile court granted GCJFS' motion for permanent custody and terminated the parental rights of both appellant and Ruth. In doing so, the court found that Shilar could not be placed with appellant within a reasonable time because he had been dilatory in meeting the various requirements for obtaining custody of the child. The trial court also found that it would be in Shilar's best interests for permanent custody to be awarded to appellee.
 {¶ 12} Appellant appealed the January 2002 judgment to this court. On appeal, we reversed the foregoing judgment on the basis that the trial court had failed to adequately discuss certain factors under R.C.2151.414(D) for determining the best interest of Shilar. Specifically, we held that the juvenile court had not fully discussed the nature of Ruth's relationship with Shilar and Shilar's wishes concerning custody, as expressed by the guardian ad litem. In light of this holding, we remanded the matter to the trial court for further proceedings. In re Salsgiver,
11th Dist. No. 2002-G-2412, 2002-Ohio-3713.
 {¶ 13} On remand, the juvenile court ordered the guardian ad litem to submit a supplemental report addressing Shilar's wishes with respect to permanent custody. After receiving the report, the juvenile court, without holding a hearing, issued a second judgment terminating appellant's parental rights and granting GCJFS permanent custody. According to the court, appellant did not have a strong bond with Shilar and his limited attempts to comply with the case plan had been "motivated more out of loyalty to [Ruth] than from a sincere desire to parent the child." As to this point, the court further found that Shilar had developed a strong bond with her foster parents. In relation to Shilar's wishes, the trial court again found that she was too young to formulate and express her own desires on this matter. The court did not, however, make a finding concerning whether the guardian ad litem had expressed an opinion on the matter.
 {¶ 14} Once again, appellant appealed the juvenile court's judgment. Among other things, he argued the following: (1) the juvenile court could not accept an additional report from the guardian ad litem because the court could only consider the evidence presented during the original hearing for permanent custody; (2) statutory law prohibited the juvenile court from accepting the report after the close of the hearing; (3) even if the juvenile court could accept the report, the court was required to hold a new hearing so that he could cross-examine the guardian ad litem on the report's contents; and (4) the juvenile court failed to make specific findings as to each of the factors set forth in R.C. 2151.414(D).
 {¶ 15} In reversing the juvenile court's judgment, this court concluded that because GCJFS could not control whether the guardian ad litem addressed Shilar's wishes in his original report, the juvenile court did not abuse its discretion in ordering the guardian ad litem to submit a supplement. Nevertheless, we held that the juvenile court erred in considering the guardian ad litem's report in an exparte manner because a parent should always be given the opportunity to present new evidence in regard to the report and to cross-examine the guardian ad litem as to the substance of his factual findings and recommendations. As for whether the juvenile court fully considered every factor found in R.C. 2151.414(D), this court held that the juvneile court had still failed to make a finding on the express wishes of the child concerning custody.
 {¶ 16} Accordingly, we instructed the juvenile court to conduct an additional evidentiary hearing in which appellant could cross-examine the guardian ad litem on his report and present any new evidence in response to the report's contents. Following the hearing, the court was to then issue new factual findings on the question of whether granting GCJFS permanent custody of Shilar was in the child's best interest. In reSalsgiver, 11th Dist. No. 2002-G-2477, 2003-Ohio-1206.
 {¶ 17} The juvenile court held a hearing on May 1, 2003, during which time appellant cross-examined the guardian ad litem. Following the hearing, the juvenile court issued a third judgment entry terminating appellant's parental rights and granting GCJFS permanent custody of Shilar. In doing so, the court found that although Shilar was not old enough to express a preference regarding her living arrangement, the guardian ad litem believed that it would be in the child's best interest if GCJFS received permanent custody.
 {¶ 18} From this decision, appellant filed a timely notice of appeal with this court. He now argues under his sole assignment of error that the juvenile court erred in determining that granting GCJFS permanent custody of Shilar was in the child's best interest.
 {¶ 19} Appellant first contends that the juvenile court failed to fully consider all five factors in R.C. 2151.414(D). In particular, he claims that despite finding that Shilar was not old enough to express an opinion on the question of custody, there was no evidence to that effect. Appellant submits that because Shilar is now over three-years-old, she should "be able to express some preference for her living arrangement at this point."
 {¶ 20} R.C. 2151.414, which governs the termination of parental rights, establishes a two-pronged analysis that the juvenile court must apply when ruling on a motion for permanent custody. R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (1) the child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (2) the child is abandoned; (3) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; or (4) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 21} Accordingly, if the juvenile court determines that a child is not abandoned or orphaned, the focus turns to whether the child can be placed with either parent within a reasonable period of time or should be placed with the parents. Under R.C. 2151.414(E), the juvenile court must consider all relevant evidence before making this determination. After doing so, the juvenile court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the conditions enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.
 {¶ 22} Assuming the juvenile court ascertains that one of the four circumstances listed in R.C. 2151.414(B)(1)(a) through (B)(1)(d) is present, then the court proceeds to an analysis of the child's best interest. In determining the best interest of the child, R.C. 2151.414(D) mandates that the juvenile court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable.
 {¶ 23} We have held on several occasions that the provisions of R.C. 2151.414(D) are mandatory and "must be scrupulously observed." In reHommes (Dec. 6, 1996), 11th Dist. No. 96-A-0017, 1996 Ohio App. LEXIS 3859, at 4. See, also, In re Hill, 11th Dist. No. 2002-G-2486, 2003-Ohio-1748, at ¶ 65; In re Kelley, 11th Dist. No. 2002-A-0088, 2003-Ohio-194, at ¶ 24; In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, 2002 Ohio App. LEXIS 5613, at 12-13; In re Litz, 11th Dist. No. 2001-G-2367, 2001-Ohio-8903, 2001 WL 1402653, at 5; In reRanker (Oct. 6, 2000), 11th Dist. No. 99-P-0072, 2000 Ohio App. LEXIS 4662, at 21. "[T]he failure to discuss each of the factors set forth in R.C. 2151.414(D) when reaching a determination concerning the best interest of the child is prejudicial error." In re Jacobs (Aug. 25, 2000), 11th Dist. No. 99-G-2231, 2000 Ohio App. LEXIS 3859, at 13. There must be some indication in the record that the magistrate or juvenile court specifically considered each of the five factors found in R.C.2151.414(D) before making its decision. Id.
 {¶ 24} "In making its factual determinations in these types of decisions, the trial court must adequately explain its reasoning from which to permit appellate review." In re Ethington (July 23, 1999), 11th Dist. No. 98-T-0084, 1999 Ohio App. LEXIS 3419, at 7. Moreover, because the factors set forth in R.C. 2151.414(D) are all relevant to the question of whether a parent should be stripped of permanent custody every factor needs to be given proper consideration. In re Alexander
(Dec. 19, 1997), 11th Dist. No. 96-T-5510, 1997 Ohio App. LEXIS 5742, at 7. Accordingly, a "juvenile court's judgment entry that discusses some — but not all — of the factors listed in R.C. 2151.414(D) must be reversed." (Emphasis added.) Hommes at 4, citing In re Brown
(1994), 98 Ohio App.3d 337, 343.
 {¶ 25} Here, the juvenile court's judgment entry reveals that the court considered every factor in R.C. 2151.414(D). With respect to Shilar's wishes, the juvenile court stated the following:
 {¶ 26} "The child is not old enough to express a preference regarding her living arrangement, but the guardian ad litem has observed a strong bond between the child and the child's foster parents and has repeatedly recommended to the court that it is in the child's best interest that permanent custody be granted."
 {¶ 27} We agree with the juvenile court that Shilar was too young to express her wishes concerning custody. Previously, this court had observed that "Shilar was not sufficiently mature in January 2002 to express her own wishes about the `permanent custody' issue. However, the act of making a specific finding as to Shilar's capabilities was not sufficient to satisfy the trial court's duty under R.C. 2151.414(D)(2). If the trial court cannot make a finding concerning the child's wishes as expressed by her, it must then make a finding about her wishes as expressed by the guardian ad litem through his opinion as to her best interests."
 {¶ 28} At the time of the May 2003, Shilar was not quite three years old, and there is nothing in the record to indicate that she was able to express herself in such a way as to help the juvenile court make a custody decision. In fact, the child's guardian ad litem testified that as of the date of his second report Shilar was unable to express her wishes to him. Moreover, the guardian ad litem concluded that, after considering the facts, it would be in Shilar's best interest if the court granted GCJFS permanent custody. Therefore, we cannot say that the juvenile court failed to consider every factor under R.C. 2151.414(D) as not only did the court find Shilar was unable to state her own preference, but the court also found that the guardian ad litem had given his opinion that permanent custody was in Shilar's best interest.[2]
 {¶ 29} Appellant next argues that the juvenile court's determination that it was in Shilar's best interest to grant GCJFS permanent custody was against the manifest weight of the evidence. He maintains that there was no evidence he was an unfit parent or otherwise unable to properly care for his daughter. As a result, appellant submits that terminating his parental rights "was a terrible miscarriage of justice[.]"
 {¶ 30} In its judgment entry, the juvenile court initially found, by clear and convincing evidence, that although Shilar was neither abandoned nor orphaned, she could not be placed with either parent within a reasonable time. The court then proceeded to consider the best interest of the child. As part of its analysis, the juvenile court found the following:
 {¶ 31} "The court further finds by clear and convincing evidence that it is in Shilar Salsgivers [sic] best interest that permanent custody be granted to GCJFS. In reaching this decision the court has considered each factor outlined in Ohio Revised Code Section 2151.415 (D) [sic]. In addition to the proceeding findings, the court makes the following additional findings regarding the child's best interest:
 {¶ 32} "The court finds specifically that the child was approximately five months old when she was removed from her home and placed in foster care. She has consistently resided in the same home and the foster parents have expressed an interest in adopting her if the agency is granted permanent custody. The child is not old enough to express a preference regarding her living arrangement, but the guardian ad litem has observed a strong bond between the child and the child's foster parents and has repeatedly recommended to the court that it is in the child's best interest that permanent custody be granted. The guardian ad litem has also observed a lack of commitment by the child's natural parents that is consistent with this courts [sic] findings above.
 {¶ 33} "* * * A grant of permanent custody would facilitate a legally secure permanent placement of the child with little risk of disruption. * * *
 {¶ 34} "* * *
 {¶ 35} "The court finds that the child's mother did have a stronger emotional bond with the minor child. She had been observed to be more actively involved in visits with the child. In the early months of the case the child's mother was actively involved in making good progress in addressing the issues that initially caused the child to be removed from her home. Her decision to abandon her efforts to work towards reunification leaves this court to conclude that the bond between the child's mother and the child were insufficient to overcome the barriers that prevented her from achieving the goals and objectives of the case plan. Clearly, the child's bond has grown stronger over time with her foster parents. The child's bond with her natural parents has grown weaker over time.
 {¶ 36} "The court finds that the child is in need of legally secure permanent placement. The child cannot be placed back in the home of either parent, and no family member has been identified as an appropriate placement for the child. Neither parent has demonstrated the commitment or ability to provide the child with a safe and nurturing environment. A grant of permanent custody to GCJFS is necessary to place the child in a permanent home without risk of further disruption.
 {¶ 37} "The court does not find that any of the factors provided for in Ohio Revised Code Section 2151.414(E)(7), (8), (9), (10), and (11) to be applicable in this case."
 {¶ 38} After reviewing the record, we conclude that there was clear and convincing evidence to support the juvenile court's judgment. Appellant failed to utilize many of the services GCJFS made available to him. For example, despite a recommendation that appellant complete a parenting class, there is no competent, credible evidence showing he did so.[3] Appellant was also tardy in initiating the process for making the court-ordered child support payments, and he did not make his first payment until after GCJFS initiated permanent custody proceedings.
 {¶ 39} Appellant now claims that he asked for custody of Shilar at the first hearing in December 2000. Unfortunately, appellant has not provided this court with a transcript of that hearing to support his claim. Accordingly, we must presume the regularity of the proceedings below. Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199. Even if appellant had asked the juvenile court for custody of his daughter, he later agreed to GCJFS continuing its temporary custody of the child so that she could be reunited with Ruth. It was only after he concluded that Ruth might lose her parental rights that he decided to make an effort to comply with the case plan.
 {¶ 40} As for appellant's claim that the juvenile court never explained to him the consequences of his actions, or lack thereof, the record shows that not only did the trial court explain the proceedings, but that appellant indicated that he understood them. Consequently, absent evidence demonstrating otherwise, we conclude that appellant was informed that if he did not successfully and timely complete the objectives in the case plan, his parental rights could be terminated.
 {¶ 41} Appellant's primary argument seems to be that he did nothing to cause the initial removal of the child from the mother's home. Accordingly, appellant believes that he should never have been included in the reunification plan, and that he was wrongfully penalized for any deficiencies in his compliance with the plan.
 {¶ 42} However, the question before the juvenile court was not whether appellant abused his daughter. Instead, the question was whether appellant was responsible for Shilar's dependency. As a parent, appellant had a legal responsibility to ensure that his child was properly cared for, regardless of whether Shilar was living with him or with her mother. While he may not have committed any specific act that resulted in GCJFS' assumption of custody, his voluntary non-involvement was, nevertheless, an important factor for consideration.
 {¶ 43} Under the case plan, appellant was given a second chance to demonstrate his suitability as a parent. The evidence, however, shows that he was a reluctant participant, beginning with his denial of parentage. That reluctance continued until it became clear that Ruth was not going to regain custody of Shilar.
 {¶ 44} Even though appellant took steps to achieve some of the objectives set forth in the case plan, his efforts were dilatory or simply non-existent. He delayed the performance of a home study for several months by not returning the necessary paperwork when requested and then returning it uncompleted. When the home study was finally finished, the results showed that appellant had failed to properly prepare a room for Shilar. Boxes filled the room from the floor to the ceiling in two of the three bedrooms, and there were "chemicals" on the floor.
{¶ 45} There was also testimony that appellant informed a caseworker that he did not intend to seek custody unless the child's mother was unsuccessful with reunification. Appellant also advised the guardian ad litem in February 2001 that he had no "interest in participating in visitations or taking a more active role with respect to Shilar[,]" and that he had "expressed his desire to be free from any involvement in a case plan ordered or supervised by the court." His visitation, like the mother's, declined noticeably as time passed.
 {¶ 46} We recognize that appellant has been representing himself in this matter and has done so since the conclusion of the permanent custody hearing.[4] This, however, does not excuse appellant in any way. Pro se litigants are held to the same standard as other litigants and are not entitled to special treatment. Kilroy v. B.H. Lakeshore Co. (1996),111 Ohio App.3d 357, 363.
 {¶ 47} Pursuant to the foregoing analysis, the juvenile court's determination that it was in Shilar's best interest to grant GCJFS permanent custody is supported by competent, credible evidence. Appellant's sole assignment of error is without merit. The judgment of the juvenile court, therefore, is affirmed.
Judgment affirmed.
DONALD R. FORD, P.J., and CYNTHIA WESTCOTT RICE, J., concur.
[1] In an earlier decision, this court stated that the case plan was never expressly amended to include these additional requirements. Our review of the record now shows that we were mistaken. On March 23, 2001, the juvenile court issued a written judgment entry in which the court provided that "if [appellant] wants to be considered for placement * * * he must take age appropriate parenting classes, have a home study completed and exercise visitation regularly."
[2] We note that the guardian ad litem did not visit Shilar between June 7, 2002, when he issued his second report and the May 1, 2003 hearing. The decision to not visit is consistent with our earlier decision in which we instructed the juvenile court to hold a hearing and allow appellant the opportunity to cross-examine the guardian ad litem on his two existing reports and to allow him to present any new evidence in response.
[3] Appellant argues that the parenting classes GCJFS suggested he attend were not available. Despite raising this issue with the juvenile court through cross-examination of a witness, appellant provided no evidence to support it.
[4] During the December 2000 hearing, appellant requested counsel to represent him. However, the record does not reveal whether appellant ever filed the paperwork necessary to verify his indigency. That being said, appellant later retained an attorney who then represented him during the permanent custody hearing.